UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>         v.<br><br>REYNA RENTERIA-AGUILAR,<br><br>                              Defendant. | Case No.:  15cr2399 BTM<br><br>**ORDER DENYING MOTION TO DISMISS INFORMATION** |

Defendant Reyna Renteria-Aguilar has filed a motion to dismiss the Information under 8 U.S.C. § 1326(d).  For the reasons discussed below, Defendant's motion is **DENIED**.

## I. BACKGROUND

The Information in this case charges Defendant with being a removed alien found in the United States in violation of 8 U.S.C. § 1326(a) and (b).

Defendant was previously deported to Mexico on December 29, 2005. Subsequently, Defendant was removed based on reinstatement of the 2005 removal order on September 1, 2006 and October 23, 2007.

The Notice to Appear for her 2005 removal proceedings charged Defendant with being an alien in the United states who has not been admitted or paroled (INA

§ 212(a)(6)(A)(i)).  (Def. Ex. C.)

During the removal hearing, the immigration judge ("IJ") noted that Defendant's December 20, 2004 conviction for burglary under Cal. Penal Code §§ 459 and 460 was an aggravated felony and that Defendant was not eligible for voluntary departure.

## II. Law Governing § 1326(d) Collateral Attacks

To sustain a collateral attack under 8 U.S.C. § 1326(d), a defendant must demonstrate that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.  United States v. Ubaldo-Figueroa, 364 F.3d 1047, 1048 (9th Cir. 2004).  An underlying deportation order is "fundamentally unfair" if (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. Id.  When the alleged defect in the deportation proceedings consists of the IJ's failure to inform the defendant regarding his possible eligibility for relief from deportation, in order to establish prejudice, the defendant must only show that he had a plausible ground for relief from deportation.  United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1998).

An alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order.  United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000).  However, the exhaustion requirement of 8 U.S.C. 1326(d) "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process."  United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001).  "[A] waiver is not considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the Immigration Judge fails to advise the

alien of this possibility and give him the opportunity to develop the issue." Id. at 1182 (internal quotation marks omitted). "Even in expedited removal proceedings . . . an alien's waiver of the right to appeal must be both considered and intelligent in order to be valid." United States v. Reyes-Bonilla, 671 F.3d 1036, 1043 (9th Cir. 2012).

## III.  DISCUSSION

Defendant contends that her 2005 removal was invalid because she was in fact eligible for voluntary departure because her burglary conviction was not an aggravated felony. According to Defendant, her burglary conviction does not qualify as an aggravated felony because (1) the 365-day sentence was "stayed" pending completion of probation; and (2) Ninth Circuit and Supreme Court precedent have made it clear that a conviction under Cal. Penal Code § 459 is neither a crime of violence nor a theft offense. The Court is not persuaded by either of these arguments.

**A.  Term of Imprisonment**

An aggravated felony includes "a crime of violence . . . for which the term of imprisonment [is] at least one year" and a "theft offense or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F), (G). Under 8 U.S.C. § 1101(a)(48)(B), a "term of imprisonment" is deemed to include "the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part."

Defendant argues that § 1101(a)(48)(B) does not apply in this case because her sentence was "stayed" as opposed to "suspended." However, the Court believes that the terms are interchangeable and that Defendant's sentence was "suspended" within the meaning of § 1101(a)(48)(B).

The abstract of judgment states, "IT IS ORDERED that imposition of sentence be suspended" for three years. (Def. Ex. B.) Defendant argues that the abstract also includes a checked box indicating that the sentence is "stayed." However, the form actually states that "*custody* is stayed" until successful completion of probation. (Emphasis added.) Thus, it appears that imposition of Defendant's sentence was in fact "suspended."

At any rate, the Court does not believe there is any significant difference between a "stay" and "suspension." The second definition for "stay" in Black's Law Dictionary (10th ed. 2014) is "An order to *suspend* all or part of a judicial proceeding or a judgment resulting from that proceeding." (Emphasis added.)

In support of her position, Defendant relies on In re Ringnalda, 48 F. Supp. 975 (S.D. Cal. 1943). Ringnalda is distinguishable because in that case, no sentence was ever pronounced, and, after probation was completed, the verdict of "guilty" was changed to "not guilty" and the case was dismissed in accordance with the "expunging of penalty" provisions of the California Penal Code. Id. at 976.

Here, the imposition of a 365-day sentence was suspended until successful completion of probation. In accordance with 8 U.S.C. § 1101(a)(48)(B), Defendant was convicted of an offense for which the term of imprisonment is at least one year.

**B. Crime of Violence**

Defendant also argues that her conviction under Cal. Penal Code §§ 459 and 460 does not qualify as a "theft offense" or "crime of violence" under 8 U.S.C. § 1101(a)(43)(F) or (G). But Defendant's conviction clearly was a "crime of violence" under the controlling law at the time of her removal hearing. Therefore, the IJ did not err in advising Defendant that she was ineligible for voluntary departure.

At the time of Defendant's removal hearing in 2005, under Ninth Circuit law,

1  residential burglary under Cal. Penal Code §§ 459 and 460 qualified as a crime of
2  violence under 18 U.S.C. § 16(b). See United States v. Becker, 919 F.2d 568 (9th
3  Cir. 1990).  Defendant points out that under current case law, § 16(b) is void for
4  vagueness, meaning that a conviction for burglary no longer qualifies as a "crime
5  of violence." See Dimaya v. Lynch, 803 F.3d 1110 (2015) (applying the analysis
6  of Johnson v. United States, 576 U.S.__, 135 S. Ct. 2551 (2015) to § 16(b) and
7  granting petition for review of a BIA determination that a conviction under Cal.
8  Penal Code § 459 is categorically a "crime of violence.").

9  However, an IJ's duty is to provide "accurate information regarding an alien's
10 eligibility for relief 'under the applicable law at the time of his deportation hearing.'"
11 United States v. Vidal-Mendoza, 705 F.3d 1012, 1017 (9th Cir. 2013) (quoting
12 United States v. Lopez-Velasquez, 629 F.3d 894, 897 (9th Cir. 2010)).  IJs are not
13 expected to anticipate future changes in law when determining an alien's apparent
14 eligibility for relief from removal. Id.  Requiring courts deciding § 1326(d)
15 challenges to apply intervening changes in the law to an IJ's removal order would
16 "effectively transform a § 1326(d) collateral challenge into a direct appeal." Id. at
17 1019.  Accordingly, "[i]n general, when intervening law renders an alien eligible
18 for discretionary relief for which he was ineligible at the time of his deportation
19 hearing, the proper remedy is for the alien to file a motion to reopen." Id. (quoting
20 Lopez-Velasquez, 629 F.3d at 899-900).

21 Citing the recent U.S. Supreme Court case, Welch v. United States, __ U.S.
22 ___, 136 S. Ct. 1257 (2016), Defendant argues that Johnson announced a
23 substantive rule that applies retroactively on collateral review.  Although Welch
24 holds that Johnson is a substantive decision that is retroactive in cases on
25 collateral review, Welch arose out of a § 2255 motion challenging the defendant's
26 sentence under the Armed Career Criminal Act and does not require retroactive
27 application of Johnson in this § 1326(d) proceeding.
28 In United States v. Aguilera-Rios, 769 F.3d 626 (9th Cir. 2014), the Ninth

Circuit explained that for purposes of retroactive application of substantive interpretations of "crime of violence" or "aggravated felon," the usual rule of full retroactivity applies in § 1326(d) cases *challenging removability*. In contrast, retroactivity does not apply to § 1326(d) challenges where the defendant contends that he or she was eligible for discretionary relief. See United States v. Gomez, 757 F.3d 885 (9th Cir. 2014) (applying law governing "sexual abuse of a minor" at the time of the deportation proceedings to determine whether the defendant was eligible for voluntary departure). In Aguilar-Rios, the Ninth Circuit explained:

> Where a noncitizen is in fact removable, the denial of an opportunity to apply for a voluntary departure, the discretionary relief at issue in Gomez, does not implicate the propriety of a removal in the same fundamental a way as does an IJ's legal determination that a noncitizen is removable on the basis of precedent we now know to have been erroneous.
>
> Where relief is discretionary, it may not have been accorded, requiring an after-the-fact inquiry comparing the equities in a particular case to those in similar cases. See, e.g., United States v. Rojas–Pedroza, 716 F.3d 1253, 1263 (9th Cir.2013) (describing the process of determining whether a noncitizen was prejudiced by an IJ's failure to advise him of his eligibility for discretionary relief, including the "focus on whether aliens with similar circumstances received relief"). And where relief was not available at the time, there are no comparable cases with which to conduct the required analysis. Moreover, the relevant facts tending to show whether an IJ would have granted discretionary relief to a particular noncitizen would often have to be reconstructed, because there would have been no reason to develop them if the noncitizen was categorically ineligible for relief from removal at the time. Finally, most forms of relief from removal are matters of grace as to someone already determined to be removable. See, e.g., Tovar–Landin v. Ashcroft, 361 F.3d 1164, 1167 (9th Cir.2004) (describing voluntary departure, the form of relief also at issue in Gomez ). Failing to obtain such discretionary relief is quite different than the situation here, where Aguilera would have had the right to be in the United States, as a lawful permanent resident, but for the IJ's determination that he was removable—a determination we now know to be legally erroneous after Moncrieffe, as we explain below.

769 F.3d at 633.

The basis for Defendant's 2005 removal was not because she was an aggravated felon—Defendant was removed because she was an alien who was present in the United States without being admitted or paroled. Therefore, Defendant's § 1326(d) challenge does not concern removability, and the Court does not apply <u>Johnson</u> in determining Defendant's eligibility for voluntary departure.

Under the law at the time of her removal hearing, Defendant's conviction for burglary constituted a "crime of violence" and an aggravated felony. Thus, Defendant was not eligible for voluntary departure, and the IJ did not err in telling her so.

### IV.  <u>CONCLUSION</u>

For the reasons discussed above, Defendant's Motion to Dismiss Information is **DENIED**.

**IT IS SO ORDERED.**

Dated:  May 19, 2016

_____
Barry Ted Moskowitz, Chief Judge
United States District Court